## LAMB v. ELIZABETH CITY.

(Filed March 24, 1903.)

EMINENT DOMAIN—*Condemnation Proceedings—Damages—Res Judicata—Former Adjudication—Acts (Private) 1899, Ch. 62, Sec. 24.*

Under Acts (Private) 1889, Ch. 62, Sec. 24, providing for the condemnation of land in Elizabeth City, a land-owner who fails to appeal from an award of damages in such proceeding cannot maintain an independent action for the value of the land.

Douglas, J., dissenting.

This is a petition to rehear in part this case, which is reported in 131 N. C., 241. Petition dismissed.

*Busbee & Busbee,* and *J. H. Sawyer,* for the petitioner.
*E. F. Aydlett* and *G. W. Ward,* in opposition.

Clark, C. J. This is a petition to rehear in part this case, which is reported in 131 N. C., 241. In that opinion a new trial was granted the petitioner as to his second ground of damages, alleged to have been sustained from the careless and negligent manner in which the defendant had moved back the plaintiff's buildings from a narrow strip of land, 8 feet wide at one end, 4 feet wide at the other, and 293 feet

long, taken off the front of the plaintiff's lot in widening the street, but the court adjudged that the first ground of damages alleged for taking said strip has been in effect abandoned by an amendment, which had been procured by the plaintiff himself; and, besides, the matter was res judicata, for it was in evidence and not denied that said strip had been regularly and legally condemned, and the damages assessed and tendered.

The plaintiff asks a rehearing upon this point upon the ground that section 24, chapter 62, Private Laws 1899, chartering the defendant town, excepts it from the application of the doctrine of res judicata in such cases. This is the sole point before us, and the order to docket the petition restricts the rehearing to the construction of the effect of said section, to the end that "this court pass upon and construe said section."

Said section 24, chapter 62, Private Laws 1899, for condemnation of land for streets and compensation to the owners thereof, provides: "In case the owners of the land and the board of aldermen cannot agree upon the price, the said board of aldermen shall appoint five disinterested free holders, residents of Elizabeth City, who shall assess the land to be condemned and make report to the board of aldermen. If the board of aldermen accept the report, they shall pay or tender to the said land owner the amount assessed, in legal tender of this country, and thereupon the title shall become vested in the board of aldermen and their successors. In case the land owner shall think the amount assessed is below the actual value of the land taken, nothing herein shall be construed to deprive him of his right to appeal, or sue de novo for damages against the corporation for the value of the land taken."

This action was originally begun by the plaintiff for ejectment, alleging that the defendant was in wrongful posses-

sion, not having paid for said strip, and also for damages (as above stated) sustained from the negligent manner in which the defendant had moved back the houses from said strip.   During the progress of the cause, the plaintiff obtained leave and amended his complaint by striking out the allegations that the defendant had "without due process of law and in violation of the rights of the plaintiff wrongfully" entered into possession of said strip, and also striking out the allegation that the defendant was "wrongfully" in possession.   On the trial, the plaintiff testified that the defendant had "condemned" the strip, and that J. W. Walker had offered him $12,000.00 for the land before the strip was taken off, and he had sold it after the strip was taken off for $12,261.00.   It was in evidence for the defendant that the street was too narrow for use, and little better than a quagmire, that the city had widened it, raised, graded, and paved it at a cost of $20,000.00, and the value of the plaintiff's property abutting thereon had been increased 20 per cent by such improvements, and one witness said it had been doubled in value thereby.   Walker (referred to in the plaintiff's evidence) testified that he offered the plaintiff $10,000.00 for the property, and had only made the $12,-000.00 offer after the city had determined to widen and pave the street and had condemned the aforesaid strip.   The condemnation proceedings were introduced in evidence, by which it appeared that the plaintiff's damages had been assessed at $30.00 and the plaintiff did not appeal therefrom, and the plaintiff testified that said sum had been tendered him.

The petitioner's contention is that the words in the Private Laws, above set forth, "nothing *herein contained* shall be *construed* to deprive him of his right to appeal or sue *de novo* for damages against the corporation for the value of the land taken," entitle him to this action for value of the strip, notwithstanding he did not appeal when he had his day in

court in the condemnation proceedings.   It will be observed
that this section does not *confer* any new right, but says he
shall not be *deprived of* his right to appeal or sue *de novo,*
that is, that the condemnation proceedings should be review-
able.   In other words, as we understand it, if the assessment
was unsatisfactory, the land owner could appeal; or if the
city did not take steps and he instituted proceedings against
the city under his common law rights and took a non-suit,
he could begin an action *de novo,* or could bring an action
*de novo* in any other instance in which he would have been
so entitled to do, if said section had not been passed.   There
is no indication that, by this section in a private act, the
legislature intended to abrogate the doctrine of *res judicata*
and the whole system of legal and orderly procedure as to
the town of Elizabeth City, and to provide that, as to that
municipality, another judgment for the identical subject
matter could be obtained in a new litigation, leaving in force
a judgment between the same parties, determining their
rights, and unappealed from.   No reasonable construction
can give such effect to words which do not import to confer
any new or exceptional rights and procedure, but which mere-
ly provide that a party shall not be *deprived of* certain rights
which are therefore recognized as existing.

The plaintiff can proceed to litigate his cause of action for
those damages authorized by our former decision (131 N. C.,
241,) which granted him a new trial.

Petition Dismissed.

DOUGLAS, J., dissenting:   I cannot concur in the opinion
of the court because, it seems to me, to deny to the plaintiff
a substantial right will establish a dangerous precedent.   The
statute under which the condemnation proceedings were had
says in express words: "If the land owner shall think the
amount assessed is below the actual value of the land taken,

nothing herein shall be construed to deprive him of his right to appeal or to sue *de novo* for damages against the corporation for the value of the land." But the opinion of the court says that "It will be observed that this section does not *confer* any new right but says he shall not be *deprived* of his right to appeal or sue *de novo.*" This brings us to the consideration of what are the rights of the citizen in the protection of his property. The opinion of the court seems to assume that in the case at bar the plaintiff had none outside of the statute. In this view I cannot concur. Suppose that the statute had failed to provide any method by which the land could be assessed, would the plaintiff have been deprived of all compensation? In my opinion the citizen has primarily the same rights and remedies for the protection of his property against corporate aggression as he would have against an individual. Let us briefly examine the Constitution of this State and see what are some of the rights of the individual. The Declaration of Rights declares, Section 17, "No person ought to be . . . . . . . in *any manner,* deprived of his life, liberty or property but by the law of the land." Section 35, *"All courts shall be open,* and every person for an injury done him in his *lands,* goods, person or reputation shall have remedy by *due course of law,* and right and justice administered without sale, denial or delay." In *Jester v. Steam Packet Co.,* 131 N. C., 54, this court, speaking through Justice Montgomery, says: "The courts of this State are open to all suitors, resident and nonresident, whether individuals or corporations." In this principle, so clearly enunciated, I fully concur and favor its universal application wherever existing conditions will permit. I am aware of the decisions holding that in certain cases the statutory remedy is exclusive; but this can be so only where, at least in the opinion of the court, the statutory remedy is adequate and it appears to be the clear intention

of the legislature, either in express words or by necessary implication, to make it exclusive.   Even then I do not think it would be constitutional unless demanded by some public necessity.

In the case at bar the statute expressly disclaims any intention of depriving the land owner of any right he may have to an appeal or suit *de novo* for the purpose of ascertaining and recovering adequate compensation.   He cannot recover the land because it has been lawfully condemned, but he can recover his just compensation.   To say that the plaintiff cannot recover his just compensation because the land was *lawfully* condemned, when the city has statutory authority to condemn whatever land it sees fit, amounts to an assertion of the right to take land without compensation.   From any such proposition I am compelled to dissent.