Argued March 3, writ allowed March 27, 1917.

## SCHMID *v.* CITY OF PORTLAND.*

(163 Pac. 1159.)

**Mandamus—Defenses—Scope.**

1. A mandatory writ, compelling the proper city officers to draw and deliver a warrant in payment of a judgment, performs the office of an execution, and is usually collateral to the judgment sought to be enforced; and consequently the city cannot resist the writ by interposing all of the defenses and making all the objections that might have been available in the condemnation action.

**Mandamus—Scope of Issues—Defenses—"Collateral Attack."**

2. Where a property owner obtained judgment against the city for damages to land taken in widening street, but the city refused to pay, and he brought *mandamus* to compel the payment, the city could not, in the *mandamus* proceedings, question the validity of the judgment which had been affirmed, since that would constitute a "collateral attack," and a party cannot collaterally impeach a judgment for errors of law or irregularities which only render it erroneous or voidable.

———

*On necessity of special benefits to sustain assessment for local improvements, see note in 14 L. R. A. 755.          REPORTER.

Judgment—Conclusiveness of Recitals.

3.   As a general rule, in a collateral proceeding a judgment imports verity, and as between the parties is conclusive evidence of the facts recited therein.

Eminent Domain—Condemnation Proceedings—Judgment—Sufficiency.

4.   In a proceeding to condemn land to widen street, the judgment, awarding a property owner $8,000 in excess of all benefits, was sufficient and not ambiguous.

Eminent Domain—Condemnation Proceedings—Scope of Review.

5.   Where the city followed the procedure in Sections 6859–6871, L. O. L., for condemnation of property, Section 6864, providing that the land owner may allege the true value of the lands and the damage resulting from the appropriation thereof, the owner could show the true value and the damage, and the city could show the special benefits.

Municipal Corporations—Public Improvements—Special Assessments—
        Special Benefits.

6.   While special benefits allowed as an offset against damages in condemnation actions may differ from benefits assessed as betterments against property located within an improvement district, nevertheless the right to levy local assessments is generally sustained on the theory that the assessed property is specially benefited by the improvement, and therefore chargeable with the cost of the special benefit.

Eminent Domain—Judgments—Conclusiveness—Damages and Benefits.

7.   Where in condemnation proceedings to take property to widen a street, the property owner was awarded $8,000 damages in excess of all benefits, the city could not hold as a lien against his judgment the amount of special benefits assessed against his property.

Eminent Domain—Judgments—Defects—Collateral Attack.

8.   In proceeding to condemn land to widen a public street, where the court had jurisdiction of the parties and the subject matter, even assuming the measure of damages to have been incorrect, the judgment rendered, allowing the property owner a net sum in excess of all benefits, was not absolutely void, and therefore was not subject to collateral attack.

    [As to award in eminent domain proceedings as bar to recovery for damages subsequently accruing, see note in Ann. Cas. 1915A, 583.]

Original proceedings in *mandamus* in Supreme Court.

In Banc.    Statement by MR. JUSTICE HARRIS.

Claiming that his right is clear and invoking the authority conferred upon the court by Section 617, L. O. L., the plaintiff Charles D. Schmid asks for a

peremptory writ of *mandamus* commanding the mayor and auditor of the City of Portland to sign and deliver to him a city warrant for the unpaid balance due on a judgment which he obtained against the municipality on account of the appropriation of some of his land for the widening of Washington Street. Having been notified to show cause why the writ should not issue, the city appeared and vigorously resisted the application.

A better understanding of the questions involved in the application for the writ may be had if a brief explanation is given of the location of two city lots owned by Schmid, the widening of Washington Street, the assessments levied on the two lots for their proportionate share of the expense of widening the street, and the condemnation of a part of one of the lots for the improvement. Washington Street extends easterly and westerly and is intersected by Lownsdale Street which runs in a northerly and southerly direction. Block 315 is bounded by Washington Street on the north and by Lownsdale Street on the east. Charles D. Schmid owns lots 1 and 2 of block 315. Each lot is 50x100 feet in size. Lot 1 is in the northeast corner of the block with a frontage of 100 feet on Washington Street and 50 feet on Lownsdale Street, while lot 2 adjoins lot 1 on the south and has a frontage of 50 feet on Lownsdale Street. The city widened Washington Street along the entire length of block 315 by using the northeast corner of lot 1 as a pivot and moving the street line southerly with the result that a triangular piece with a base of 9.9 feet was taken from lot 1. In making the improvement and in causing the appropriation of a portion of lot 1 the city acted on the authority of what was adopted as section 107 when the legal voters on May 3, 1913, in the ex-

ercise of the rights conferred by the home rule amendments to the constitution, approved the charter for a commission form of government. Section 107 reads thus:

"When the public necessity shall require it, the council may, by ordinance, direct the city attorney to institute an action for condemnation of any property needed for a street or for any other public use. By the same ordinance the council shall direct the city engineer within ten days from the beginning of such action to view such property and make a report to the council of the value of the property and of the rights and interest of the several persons having interests therein as reported by the city attorney on examination of the title.

"The council shall thereupon provide a fund and draw a warrant thereon in favor of such persons for the sum or sums found by the city engineer, or such greater sum as they may deem proper security for the owners.

"Such fund may be provided by appropriation from the general fund, by levy of assessments for benefits, as in other cases or in any other lawful manner. Within five days from the deposit of the warrant in the registry of the court where the action is pending, the city may take possession of the property unless application shall sooner be made to the court for a ruling increasing the amount of the security. If such application shall be made within the time limited the court shall hear same forthwith in a summary way, and fix such security as it shall deem necessary as security for the taking.

"If the amount is not increased, the city may take possession immediately. If the amount be increased, the city shall take possession as soon as the council shall provide a fund and draw a warrant thereon for the amount so fixed, and deposit the same in the registry of the court. The action shall then proceed to trial and judgment as other like actions.

"No person shall be disqualified to act as a juror therein by reason of his being a resident and property

owner within the city. If the verdict be given for a greater amount than the appropriation, judgment shall be against the city for the excess to be payable immediately, and if the court shall so direct, as a condition of the further use of the property of the city; if for a less sum, a new warrant shall be given for the amount of the judgment, and that deposited shall be returned.

"This section shall not be construed as precluding the owner from any remedies otherwise given by law to determine whether the property is subject to appropriation."

Between March, 1915, and October, 1915, the municipality directed the city engineer to prepare a plan for widening Washington Street and an estimate of the cost of the improvement, approved the plan and estimate of cost made by the city engineer, established the boundaries of the assessment district to be charged with the cost, declared the probable cost, enacted an ordinance for widening the street, apportioned the total estimated cost of $12,337.50 for the improvement among the several parcels of land within the assessment district, and finally over the objection of Schmid, levied assessments according to the previous apportionment, lot 1 being charged with $890 and lot 2 with $110. These assessments were entered in the docket of city liens.

The municipality was unable to agree with Schmid upon the compensation to be paid for taking part of lot 1 and consequently on March 22, 1916, the council adopted a resolution, although the charter uses the word "ordinance," directing the city attorney to commence condemnation proceedings to acquire the needed land owned by Schmid. The action was begun the next day in the Circuit Court for Multnomah County and the trial resulted in a verdict awarding Schmid "damages in excess of all benefits to lots One (1) and

Two (2) Block 315 of the City of Portland in the sum of Eight Thousand $8000 Dollars''; and on May 15, 1916, the court entered a judgment declaring that Schmid is ''hereby awarded damages in excess of all benefits to lots 1 and 2, block 315, City of Portland, County of Multnomah, State of Oregon, in the sum of $8000'' together with a specified sum as reasonable attorney's fee and costs and disbursements. The city appealed, but the court found that it had forfeited its right to appeal by taking possession of the condemned property, and the judgment was therefore affirmed: *City of Portland* v. *Schmid*, 82 Or. 465 (161 Pac. 560).

A judgment was entered in the Circuit Court on January 17, 1917, on the mandate of this court and on the same day Schmid presented to the auditor a certified copy of the docket of the judgment together with an acknowledgment of satisfaction in obedience to Section 361, L. O. L., and demanded a warrant on the city treasurer for the amount of the judgment. The city officers drew a warrant for $7,762.38, claiming that the $890 assessment levied on lot 1 and the $110 assessment imposed upon lot 2 were subsisting and unpaid taxes and indebtedness and that it was the right and duty of the city officers to deduct the principal and interest of those assessments from the amount of the judgment against the city, as required by a section of the charter which reads thus:

''No demand shall be allowed by the auditor in favor of any person or corporation indebted to the city in any manner, except for assessments or taxes not delinquent, without first deducting the amount of any indebtedness then due of which he has notice.''

Section 72 of the 1913 charter as revised by the council August 19, 1914 (see also Section 277 of the 1903 charter found in Special Laws 1903, p. 109).

Writ Allowed.

For plaintiff there was a brief over the names of *Messrs. Griffith, Leiter & Allen* and *Mr. John R. Latourette,* with oral arguments by *Mr. Harrison Allen* and *Mr. Latourette.*

For defendant there as a brief over the names of *Mr. Walter P. La Roche,* City Attorney, and *Mr. Lyman E. Latourette,* Deputy City Attorney, with an oral argument by *Mr. Latourette.*

MR. JUSTICE HARRIS delivered the opinion of the court.

Recapitulating the foregoing statement, this controversy presents a situation where the city passed appropriate ordinances for the widening of a street, charged all the costs to property within a prescribed assessment district, and apportioned $1,000 as the share of the expense of the improvements to be borne by two lots owned by Schmid; and subsequently in aid of the street improvement, the city commenced an action in the Circuit Court, under the general statutes, for the condemnation of a part of one of the lots owned by Schmid; the condemnation action resulted in a verdict and judgment allowing $8,000 as the damages "in excess of all benefits" to the two lots; and afterwards on appeal it was determined that the city was bound to pay Schmid $8,000 for the reason that the municipality had accepted the fruits of the judgment by taking possession of the condemned property; the city is attempting to deduct the assessments on the two lots from the $8,000 judgment while Schmid is endeavoring to compel the city to pay the judgment in full without making any deductions on account of the assessments against lots 1 and 2 in block 315. The theory of the municipality is that the Circuit Court was without

jurisdiction to do more than ascertain the gross damages and that the judgment is void to the extent that it speaks of benefits. Schmid argues that the judgment is now final and conclusive and that the city is estopped from disputing the recitals found in it.

1, 2. A mandatory writ compelling the proper city officers to draw and deliver a warrant in payment of a judgment performs the office of an execution and, like most other proceedings to enforce a judgment, is usually collateral to the judgment sought to be enforced; and consequently the city cannot resist the writ by interposing all of the defenses and making all the objections that might have been available in the condemnation action. The attack now being made by the city is a collateral assault on the judgment rendered in the Circuit Court: 23 Cyc. 1064, 1346; 15 R. C. L., p. 874. A judgment which is void on its face may be collaterally attacked; but a party to a judgment cannot collaterally impeach it for errors of law or irregularities in practice which do no more than to render it merely erroneous or voidable: *Morrill* v. *Morrill,* 20 Or. 96, 105 (25 Pac. 362, 23 Am. St. Rep. 95, 11 L. R. A. 155); *Smith* v. *Ormsby,* 20 Wash. 396 (55 Pac. 570, 72 Am. St. Rep. 110); *Edmundson* v. *Independent School District,* 98 Iowa, 639 (67 N. W. 671, 60 Am. St. Rep. 224); *Bear* v. *Board of County Commissioners,* 122 N. C. 434 (29 S. E. 719, 65 Am. St. Rep. 711); *Howard* v. *Huron,* 5 S. D. 539 (59 N. W. 833, 26 L. R. A. 493); *City of Sherman* v. *Langham,* 92 Tex. 13 (40 S. W. 140, 42 S. W. 961, 39 L. R. A. 258); 23 Cyc. 1070, 1096. Quoting from 1 Black on Judgments (2 ed.), Section 246:

"If the judgment is void on its face it is of course a mere nullity and of no avail for any purpose, and this may be urged against it whenever it is brought in question. But otherwise, whether it be regular or irregu-

lar, correct or erroneous, valid or voidable, it is not subject to collateral attack.''

3. Subject to certain qualifications the general rule is that in a collateral proceeding a judgment imports verity and, as between the parties, is conclusive evidence of the facts recited in it: 23 Cyc. 855, 856; *Boynton* v. *Crockett,* 12 Okl. 57 (69 Pac. 869).

4. The judgment in the condemnation action is not ambiguous but it measures up to the standard set by *Dray* v. *Crich,* 3 Or. 298, 299, 300, by stating in definite terms the matters that were adjudicated. The language of the verdict and judgment is comprehensive, for both the jury and the court fix $8,000 as the ''damages in excess of all benefits'' to the two lots owned by Schmid.

5. It must be remembered that the city availed itself of the remedy offered by Sections 6859 to 6871, L. O. L., inclusive, for the condemnation of property for a public use; and that by the terms of Section 6864, L. O. L., the land owner may allege in his answer ''the true value of the lands and the damage resulting from the appropriation thereof'': *Skelton* v. *Newberg,* 76 Or. 126, 132 (148 Pac. 53). When the general statutes are resorted to for the condemnation of land for a public use the owner is entitled to allege and prove not only the value of the realty taken but also the damage to the remainder of the tract; and, ordinarily the appropriator may in turn offset the damages by showing that the remaining land is specially benefited, but the burden of showing special benefits is on the party seeking to condemn: 15 Cyc. 774; *Portland & O. C. R. Co.* v. *Ladd Estate Co.,* 79 Or. 517, 520 (155 Pac. 1192); *Beekman* v. *Jackson County,* 18 Or. 283, 285 (22 Pac. 1074); *Lamb* v. *Elizabeth City,* 131 N. C. 241 (42 S. E. 603).

6. While special benefits allowed as an offset against damages in condemnation actions may differ in some respects from benefits assessed as betterments against property located within an improvement district nevertheless the right to levy local assessments is generally sustained on the theory that the assessed property is specially benefited by the improvement and therefore chargeable with the cost of the special benefit: *Masters* v. *City of Portland,* 24 Or. 161, 167 (33 Pac. 540); *Oregon & Cal. R. Co.* v. *Portland,* 25 Or. 229, 238 (35 Pac. 452, 22 L. R. A. 713); *Ivanhoe* v. *City of Enterprise,* 29 Or. 245, 248 (45 Pac. 771, 35 L. R. A. 58); *King* v. *Portland,* 38 Or. 402, 418 (63 Pac. 2, 55 L. R. A. 812); 1 Page and Jones on Tax. by Assessment, § 64; 15 Cyc. 561.

7. If the assessments levied upon lots 1 and 2 are deemed to be subsisting liens representing the amount of special benefits chargeable against the land then the verdict of the jury and the judgment of the court may fairly be construed to mean that the sum of the assessments plus all other benefits resulting from the street improvement were deducted from the gross damages and that the net damages amount to $8,000. This is the construction placed upon the verdict and judgment by the city in the appeal from the judgment in the condemnation action, for the city included among the assigned errors in that appeal a complaint because the court had received a verdict ''which undertakes to make an award of damages 'in excess of all benefits to lots 1 and 2, block 315 of the city of Portland' '' and because the court had entered a judgment in conformity with the verdict; and, moreover, the city declared in its printed brief that ''the verdict affects not only special benefits but all benefits.'' The verdict and judgment therefore represent the net damages after

deducting the local assessments and all other benefits. If the judgment represents the net damages then it necessarily follows that the city cannot again deduct the assessments for the reason that the benefits represented by the local assessments are chargeable but once: 1 Page and Jones on Tax. by Assessment, § 67; *State ex rel.* v. *District Court,* 66 Minn. 161 (68 N. W. 860); *Davis* v. *Newark,* 54 N. J. Law, 595 (25 Atl. 336).

8. Since the judgment is for the net damages after deducting the assessments and all benefits the only inquiry remaining is whether the judgment is void or voidable. If the judgment is merely voidable then the collateral attack now made by the city must fail. The court had jurisdiction of the parties and of the subject matter. The very purpose of the litigation was to ascertain the compensation to be paid to Schmid for appropriating part of his land and in fixing the amount of compensation the court necessarily applied rules for measuring the compensation. These rules may have been correct or incorrect; if correct, the resultant of those rules is unassailable in any proceeding; and if incorrect, the resultant is safe from attack in a collateral proceeding even though it may be vulnerable to a direct assault. The court did exactly what it was called upon to do; it ascertained the compensation to be paid to Schmid. An incorrect measure of compensation would not necessarily render the judgment void because generally an incorrect measure would do no more than to render the judgment erroneous and voidable. While the verdict and judgment are unambiguous nevertheless if it were either necessary or proper to examine the complaint in the condemnation action that pleading might offer some explanation for the language of the verdict and judgment. The complaint tells about the $890 assessment on lot 1 and

among the requests appearing in the prayer is one for permission to pay this and another lien out of the damages awarded by the jury. It is not necessary, nor do we attempt to decide whether Schmid was entitled to ignore the assessments and try the condemnation action as though no assessments had been levied, nor do we undertake to determine whether the city could have insisted on confining the jury to the single question of gross damages on the theory that the local assessments previously levied foreclosed the right of the Circuit Court to inquire into any benefits; but it is sufficient for the purposes of the instant case to say that the judgment in the condemnation action was not void but that it was either a perfect or merely an erroneous judgment. If on the one hand it is a perfect judgment it is impregnable; or if on the other hand it is merely erroneous but not void it is safe from attack for any of the reasons urged by the city in this collateral proceeding. Every blow attempted to be struck in this collateral attack against the condemnation judgment was also aimed at it when the city made a direct attack by appealing from the judgment. A judgment which has become a finality between Schmid and the City of Portland declares that $8,000 is the sum to be paid to the former "in excess of all benefits," and as was said in *Howard* v. *Huron,* 5 S. D. 539 (59 N. W. 833, 26 L. R. A. 493):

"The judgment estops the city from asserting the fact to be otherwise. In theory of law, therefore, the assertion of the city cannot be true."

Moreover, if the jury did deduct the assessments from the gross damages the municipality could not complain. Schmid is entitled to the unpaid balance of his judgment and his application for a peremptory writ of *mandamus* is granted.          WRIT ALLOWED.